IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TRACY TIMMONS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | No. 4:18cv4368 |
| VS. | § | |
| | § | Jury Trial Demanded |
| SAN JACINTO COLLEGE, | § | |
| | § | |
| Defendant. | § | |

## **PLAINTIFF'S RESPONSE TO**
## **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

David C. Holmes, Attorney in Charge
State Bar No. 09907150
Southern District No. 5494
13201 Northwest Freeway, Suite 800
Houston, Texas 77040
Telephone: 713-586-8862
Fax: 713-586-8863
dholmes282@aol.com

ATTORNEY FOR PLAINTIFF

# **TABLE OF CONTENTS**

NATURE AND STAGE OF THE PROCEEDING . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

I.      The Court May Dismiss the ADA and FMLA Claim . . . . . . . . . . . . . . . . . 5

II.     San Jacinto College's Arguments Regarding the Title VII Claim
        Are Without Merit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

# NATURE AND STAGE OF THE PROCEEDING

This is an employment case. Ms. Timmons worked as a research librarian for San Jacinto College from 2011 to 2017. Beginning in 2012, she complained repeatedly about racial harassment by her immediate supervisor (John Brower) and by his supervisor (Karen Blankenship). This culminated in an angry face-to-face meeting in June 2017 during which Ms. Timmons accused Mr. Brower and Ms. Blankenship of racism. San Jacinto College suspended and then terminated Ms. Timmons for insubordination based on her conduct at this meeting.

This is a direct evidence case, in that there is no dispute about the reasons for Ms. Timmons' termination. The sole issue with respect to liability is whether San Jacinto College was justified in firing Ms. Timmons solely because two of its supervisors were upset with the manner in which Ms. Timmons opposed behavior that she perceived to be racist on their part.

Discovery is complete. Ms. Timmons moved for partial summary judgment as to liability on December 3, 2019. Doc. 14. That motion is now fully briefed and ready for a decision. The present motion is largely duplicative of that motion.

# STATEMENT OF FACTS

The facts of this case are set forth in connection with Ms. Timmons' pending motion for partial summary judgment (Doc. 14) and its appendix (Doc. 14-1). Ms. Timmons incorporates those pleadings by reference into this response. In the

1

interest of brevity, Ms. Timmons will not repeat the detailed discussion of the relevant facts in that motion.

San Jacinto College spends most of its time discussing events from 2012 to early 2017 that are relevant only as a distant background to the events leading up to Ms. Timmons' termination in June 2017. Yet even San Jacinto College's description of the events shows that there was a long history of complaints by Ms. Timmons about racist conduct on the part of Mr. Brower. Naturally, San Jacinto College claims that Ms. Timmons was wrong about all of her complaints, but at most this is a disputed issue of fact that is ultimately immaterial to the resolution of the case. San Jacinto College does not claim that it fired Ms. Timmons for anything that happened prior to June 2017.

Nonetheless, some of the claims by San Jacinto College border on the absurd. For example, Ms. Timmons testified that Mr. Brower told her that white people were "the ruling class." San Jacinto College claims that Mr. Brower "had read an article on changing demographics in the United States, that he had referenced that the ruling class of white men was coming to an end, and that he viewed this change positively." SJC Motion at 9 n.4. Given that Ms. Timmons had already made complaints about racist behavior on his part and that there was already considerable antagonism between them, is it even remotely credible that Mr. Brower would have innocently commented on racial demographics to Ms. Timmons? Of course not.

2

Likewise, Ms. Timmons testified that Mr. Brower referred to illegal interview questions on the Mary Tyler Moore show and the fact that there was only one black person on the show. San Jacinto College now claims that "Brower noted that the show was ahead of its time and was one of the first to have a recurring African-American character." SJC Motion at 7. Again, is it even remotely credible that Mr. Brower would have innocently discussed the casting of a black actor on a TV show with Ms. Timmons? Of course not.

For purposes of this motion, the question is whether a reasonable jury could find that Ms. Timmons was fired for protesting racism in June 2017. In fact, this issue has already been considered by another finder of fact – the Appeals Tribunal of Texas Workforce Commission. Exhibit A to this Response. The TWC decision is not admissible as evidence of retaliation and is not binding on this Court through collateral estoppel. Tex. Labor Code § 213.007. Nonetheless, the TWC decision illustrates how a reasonable trier of fact could interpret the evidence in this case.

In connection with Ms. Timmons' claim for unemployment benefits, the Appeals Tribunal found that Mr. Brower provoked Ms. Timmons' outburst:

> The claimant was discharged because she accused her supervisor of being a racist. The Tribunal finds that the supervisor's treatment of the claimant with regard to requesting time off was demeaning and spiteful, following her rightful complaints about his inappropriate racial comments. Though the supervisor may not have been aware that his comments carried hurtful messages and stereotypes, they were nonetheless, tinged with racism and the claimant was justified in bringing her complaints. The employer was unjust in ignoring them and

3

> in enabling the supervisor to retaliate unabated. Therefore, the claimant's complaints, even her use of the N-word, are justified under the circumstances. There are no perfect victims. Even if the Claimant was a bit thin skinned to begin with, the amalgamation of slights and insults, were enough to provoke even the most even keeled claimant. Therefore, the Tribunal finds that the claimant was discharged for lodging a legitimate and appropriate complaint, which the employer failed to address.

Exhibit A at 4. With respect to Ms. Timmons' conduct at the meeting, the Appeals Tribunal was unimpressed with San Jacinto College's argument:

> The employer alleged that it was not the complaint but the manner [in] which it was lodged that was the impetus for the discharge. Applying the first above-cited precedent to this case, the Tribunal gives greater weight to the credible and persuasive testimony of the claimant and finds that the claimant did not bang her fist on the desk and scream in a threatening manner. The parties agree that the claimant used the N-word. As the second above-cited precedent points out, a claimant must give the employer a chance to address inappropriate comments and conduct coming from a coworker. In this case and under these circumstances, the foul language does not rise to the level of misconduct because the claimant was provoked by the steady stream of aggressions by the supervisor, and unlike the claimant in the second precedent case, she did give the employer ample opportunity to address the behavior. The employer chose instead to isolate and blame the claimant. Therefore, the claimant was discharged for reasons other than misconduct connected to the work.

Exhibit A at 4.

Again, we are not offering this decision as evidence, and we are not arguing that it is binding on the Court. However, to the extent that the issue is whether a reasonable jury could find that Ms. Timmons' conduct was justified, we know that one trier of fact has already done so.

4

# ARGUMENT

I. The Court May Dismiss the ADA and FMLA Claim.

The ADA and FMLA claim in this case has always been conditional. Ms. Timmons had been seeking medical leave just before she was fired. If the request for medical leave had been a factor in Ms. Timmons' termination, she would have a claim under the ADA and/or FMLA. Given that we had no discovery into the decision-making process, we pleaded the claim in the alternative:

> **Claim 2: Alternative Claim for Retaliation Under the FMLA and ADA**
>
> . . . .
>
> 16. Later on June 15, 2017, Ms. Timmons had the meeting with Ms. Blankenship that would serve as the pretext for her termination. The meeting related to timekeeping issues regarding time that Ms. Timmons missed due to her disability, and to the fact that Mr. Brower was handling those issues in a racially offensive way.
>
> 17. While San Jacinto College has focused on the racial content [in] the exchanges, to the extent that the request for leave (which was covered by both the FMLA and the ADA) was a causative or motivating factor in the subsequent events, then the termination was in retaliation for the exercise of rights under the FMLA and the ADA.

Doc. 1 at 3-4.

Now that we conducted discovery, we have found no evidence (other than naked temporal proximity) showing a relationship between the leave request and the termination. The internal documents link the termination to Ms. Timmons' opposition to racial discrimination. Thus, the Court may dismiss this claim.

5

II.  San Jacinto College's Arguments Regarding the Title VII Claim Are Without Merit.

Most of San Jacinto College's arguments are addressed in the briefing for Ms. Timmons' motion for partial summary judgment. In the interest of brevity, will not repeat all of that briefing. San Jacinto College makes six arguments, all of which are without merit.

First, San Jacinto College argues that Ms. Timmons did not engage in protected conduct. SJC Motion at 13. San Jacinto College does not deny that opposition to racial discrimination is protected activity for purposes of Title VII, nor does San Jacinto College deny that Ms. Timmons was in fact opposing racial discrimination on June 15. Instead, San Jacinto argues that Ms. Timmons' opposition was not "protected" because it was inflammatory.

As we have shown, this misconstrues the law. Reply in Support of Motion for Partial Summary Judgment (Doc. 20) at 1-3 ("Timmons Reply"). San Jacinto College confuses "protected activity" (*i.e.,* opposition to race discrimination) with the application of the balancing test to determine whether the protected activity "remain[s] insulated from reprisal under Title VII's shield." *Douglas v. DynMcDermott Petroleum Operations Co.*, 144 F.3d 364, 373 (5th Cir. 1998).

Second, although San Jacinto College argues that it was justified in firing Ms. Timmons (SJC Motion at 15), San Jacinto College conspicuously fails to address the balancing test required under the law. As discussed in Ms. Timmons' motion, we

6

submit that the appropriate format for a balancing test is the NLRB's *Atlantic Steel* framework. Doc. 14 at 17-18. Regardless of whether the Court applies that specific format, we identified the following factors that are relevant to the balancing test:

(1) San Jacinto College has no specific policy or rule that applies to Ms. Timmons' conduct. Obviously, it is problematic when the employer seeks to prescribe a standard of conduct for employee complaints and then apply that standard retroactively to someone who is complaining about racism.

(2) The subjective opinions of the persons who are accused of racism (Mr. Brower and Ms. Blankenship) are of limited relevance. People who are accused of improper behavior, in this case racism, are likely to be offended by the accusation, but this cannot override the prohibition on retaliation.

(3) On June 15, 2017, everyone knew that Ms. Timmons was protesting racism when she made the "slave mentality" comment.

(4) San Jacinto College's HR rep made the decision to counsel Ms. Timmons for that comment by sending two employees to talk to Ms. Timmons <u>even though she had complained about racism by those two employees</u> and even though the "slave mentality" comment was directed to one of the employees.

(5) In effect, San Jacinto College created the circumstances for an acrimonious meeting, rather than having someone else (such as the HR rep herself) handle the situation.

7

(6) The meeting took place behind closed doors.

(7) It is disputed whether Ms. Timmons "screamed" at Ms. Blankenship, but it is undisputed that Ms. Timmons did not actually do anything violent or threatening, no matter what Ms. Blankenship claims to have feared.

(8) The whole incident was over within a minute or so. Even though Mr. Brower opportunistically tried to call the police, he had to cancel the call.

(9) Ms. Timmons did not commit any unlawful or criminal act.

Given that San Jacinto College has failed to address any of these factors or to address the balancing test, San Jacinto College has failed to present a valid argument for summary judgment.

Third, San Jacinto College argues that the application of the balancing test is governed by the judgment of San Jacinto College, even if that judgment is wrong. SJC Motion at 15. This is inconsistent with the Fifth Circuit's balancing test, which seeks "to determine whether Title VII's protections may be denied to an employee's activities that adversely affect his effective performance of job duties." *Douglas*, 144 F.3d at 373. While the courts have sometimes applied a "good faith belief" standard to cases involving poor job performance and the like, the Fifth Circuit's balancing test presents a question for the Court or the jury, not for the employer.

Fourth, San Jacinto College argues that there is no evidence that Chancellor Hellyer "harbored retaliatory animus." SJC Motion at 15. As we have shown,

8

Chancellor Hellyer knew that Ms. Timmons was opposing racial discrimination at the meeting in June 2017. Timmons Reply at 4. Chancellor Hellyer knew that she was approving Ms. Timmons' termination based on that meeting. In fact, Chancellor Hellyer was acting on the recommendation of Ms. Del Bello and Provost Wigginton, who had full knowledge of what had happened. *Id.*; *see Staub v. Proctor Hosp.*, 562 U.S. 411, 418-22 (2011) (rejecting the argument that an employer could hide behind a "neutral decisionmaker" when the decision was influenced by lower level employees who were not neutral). San Jacinto College seems to suggest that some greater degree of intent is required, but it cites no authority for this proposition. Title VII prohibits discrimination and retaliation, but it does not require a showing of actual malice or hatred.

Fifth, San Jacinto College disputes that this is a direct evidence case. SJC Motion at 14. As we have shown, this is wrong. Timmons Reply at 3-5. There is no dispute that Ms. Timmons opposed racial discrimination at the June 15 meeting, nor is there any dispute that she was fired for her expression of opposition. The only legitimately disputed issue in this case is the application of the balancing test "to determine whether Title VII's protections may be denied to an employee's activities that adversely affect his effective performance of job duties." *Douglas*, 144 F.3d at 373.

Sixth, San Jacinto College argues that the *McDonnell Douglas* test applies, but it fails to discuss any of the elements of a prima facie case. SJC Motion at 16. Apparently, San Jacinto College believes that it can skip the Fifth Circuit's balancing test by citing irrelevant pretext cases that involve terminations for poor performance and the like. San Jacinto College's argument boils down to this: "[Ms. Timmons] cannot show that, *but for* her opposition to racial discrimination, she would not have been terminated." SJC Motion at 16. Not only can we show that, but it is undisputed. If Ms. Timmons had not been opposing racial discrimination, the "slave mentality" e-mail would never have been sent, the June 15 meeting would never have occurred, and Ms. Timmons would never have accused Ms. Blankenship of racism to her face. As a matter of law, Ms. Timmons' opposition to race discrimination is the but-for cause of the termination.

It is important to remember that but-for causation is not a difficult standard and is not the same as sole causation. The Fifth Circuit offered guidance with respect to "but-for" causation:

> But-for causation requires the government to show merely "that the harm would not have occurred in the absence of—that is, but for— the defendant's conduct." <u>This is "not a difficult burden to meet." An event might have "many but-for causes." For example, the Supreme Court has explained that a leadoff batter's home run is just one among many but-for causes of a team's 1-to-0 victory, which resulted also from the winning team's "skillful pitching, the coach's decision to put the leadoff batter in the lineup, and the league's decision to schedule the game," and perhaps also from the opposing pitcher leaving "his fastball hanging over the plate."</u> A proximate-cause inquiry would ask how

10

*directly* each cause affected the final outcome, but the but-for causation standard asks simply whether the outcome would have occurred in the absence of the action.

*United States v. Salinas*, 918 F.3d 463, 466 (5th Cir. 2019) (citations omitted) (emphasis added).[1]

Ms. Timmons easily satisfies the but-for causation standard. The remaining issue is the application of the balancing test, which San Jacinto College chooses not to address.

## **CONCLUSION**

As discussed in Ms. Timmons' motion, we believe that Ms. Timmons' conduct remained protected as a matter of law, so that San Jacinto College is liable as a matter of law. The question raised by this motion is less stringent: If the Court allowed San Jacinto College to present its arguments to a jury, could a reasonable jury find that Ms. Timmons' conduct remained protected? The answer is clearly yes. The decision of the TWC Appeals Tribunal illustrates how a neutral factfinder could, and would, resolve the factual issues in this case.

Accordingly, San Jacinto College's motion should be denied.

---

[1] While *Salinas* was a criminal sentencing case, it is based on *Burrage v. United States*, 571 U.S. 204 (2014), which in turn applies the but-for standard from employment cases such as *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013), and *Gross v. FBL Fin. Servs.*, 557 U.S. 167 (2009).

Respectfully submitted,

/s/ David C. Holmes
David C. Holmes, Attorney in Charge
State Bar No. 09907150
Southern District No. 5494
13201 Northwest Freeway, Suite 800
Houston, Texas 77040
Telephone: 713-586-8862
Fax: 713-586-8863
dholmes282@aol.com

ATTORNEY FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of this pleading was sent electronically to all counsel of record on January 7, 2020.

/s/ David C. Holmes
David C. Holmes

## CERTIFICATE OF WORD COUNT

I certify that Word shows that this document contains 2,819 words, excluding the parts identified in the Court's procedures.

/s/ David C. Holmes
David C. Holmes