IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TRACY TIMMONS, | § § § | |
| Plaintiff, | § § | No. 4:18cv4368 |
| VS. | § § | Jury Trial Demanded |
| SAN JACINTO COLLEGE, | § § | |
| Defendant. | § | |

## EXHIBIT A

## TO

## PLAINTIFF'S RESPONSE TO
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

 # Texas Workforce Commission
## Appeal Tribunal 

TWC Building
Austin, Texas 78778

**10-10-2017**
Date Mailed

CLAIMANT:

TRACY TIMMONS
PO BOX 2352
HOUSTON TX 77252-2352

| | |
|---|---|
| Appeal No. | 2198856-1-2 |
| S.S. No. | XXX-XX-6048 |
| I. C. Date | 07/16/2017 |
| Appeal Filed By: | Claimant |
| Date Appeal Filed: | 09/06/2017 |

**Notice:** The attached decision of the Appeal Tribunal will become final unless, within **FOURTEEN (14) DAYS** after the date mailed, further action is taken in accordance with the instructions contained in this decision. The last day on which you may file an appeal is **10-24-2017**. This date takes into account any official Texas State or Federal holiday which would extend the appeal time limit.

## Appearances:

| Date/Location | For Claimant | For Employer |
|---|---|---|
| 09/26/2017 Telephone | KAREN MCCLOUD, Attorney (No Testimony) | KAREN BLANKENSHIP, Director, Library |
| | TRACY TIMMONS | VICKI DELBELLO, Director, Employee Relations |
| 10/09/2017 Telephone | KAREN MCCLOUD, Attorney (No Testimony) | KAREN BLANKENSHIP, Director, Library |
| | TRACY TIMMONS, | VICKIE DELBELLO, Director, Employee Relations |

EMPLOYER:   PI: X   NPI: ___   Account No. 99-993372-6

SAN JACINTO COLLEGE
DISTRICT
4624 FAIRMONT PKWY STE 106
PASADENA TX 77504-3329

**A-1ATE (907) DATES ARE SHOWN AS MONTH, DAY, & YEAR.**

San Jacinto College 000412

**CASE HISTORY:** A determination dated August 31, 2017 disqualified the claimant under Section 207.044 of the Texas Unemployment Compensation Act because the claimant was discharged from the last work due to misconduct connected with the work. The no payment period began July 16, 2017 and continues until the claimant returns to employment and either works for six weeks or earns wages at least equal to six times the claimant's weekly benefit amount. The claimant appealed.

The employer will not be billed.

**ISSUES:** The issues in this case include:

Whether the claimant separated from the last work as a result of a discharge based on work-connected misconduct or a voluntary quit without good work-connected cause.

Whether benefits paid to the claimant which are based on wages from this employer shall be billed to the employer.

**FINDINGS OF FACT:** Prior to filing an initial claim for unemployment benefits with the effective date of July 16, 2017, the claimant last worked from January 12, 2012, through June 27, 2017, as a reference Librarian for the named employer, a community college.

The claimant's supervisor had made several racially loaded comments to the claimant about black people. The claimant filed complaints with the employer, which investigated the complaints and dismissed them as meritless. Later, in February, 2017, the claimant's supervisor made another inappropriate remark and the claimant picked up the telephone to call HR. The supervisor grabbed the phone from the claimant and slammed it down on the receiver, informing the claimant that she would not be taking her complaint to HR. The claimant called the campus police to report the assault. The employer disciplined the supervisor, but did not terminate him.

Following that incident, the supervisor retaliated against the claimant by making other racist comments, by treating her differently from similarly situated employees, and by harassing her for taking leave due to an injury. The supervisor asked the claimant if an unkempt African-American student was her "brother." He forced her to make her niece, a minor child, sit in the lobby, while he allowed other workers to bring their relatives into staff-only areas regularly. And, he made irrelevant, petty, and demeaning demands of the way she asked to work compensatory hours for time missed at doctors. The record shows that in all cases, the employer allowed the claimant to work the compensatory hours. However, the employer castigated the claimant for framing her requests as a declarative sentence (i.e. "I will work until 9 PM [instead of my customary time of 6 PM]. The Supervisor, and his supervisor, felt it important to stress that the claimant also added the interrogative (i.e. "Okay?"). The absence of the "Okay?" made the request unacceptable and the employer would not respond to the claimant's emailed requests.

The claimant made several complaints, which the employer found non-meritorious. When the claimant complained that the supervisor had walked in on her with her pants down in a one-person restroom, the employer found it necessary to inform the claimant that if she went through with filing the claim and it was found to be non-meritorious, she would be fired; despite the fact that the parties did not dispute the prima facie case—that the claimant was in the single-stall bathroom and the supervisor walked in on her. The only issues before the employer was whether the supervisor's conduct was intentional or culpable and whether the supervisor lingered in the restroom or not (the claimant felt that he did).

San Jacinto College 000413

Finally, on June 15, 2017, the claimant responded to the supervisor's demand for a question mark in her time requests by complaining that she was being treated with a "slave mentality." The supervisor and his supervisor took a two-on-one meeting with the claimant to front her on her language. The claimant explained that her use of the terms was because the supervisor's condescension and discriminatory treatment—he treated the claimant different than her mostly-white coworkers—was racist. The supervisor's supervisor dismissed the supervisor, and told the claimant that because she had brought up her complaint of racism, the conversation and the claimant's job were over—she had enough and the claimant would be discharged.

Nonetheless, the supervisor's supervisor told the claimant she had always respected her and her work. The claimant told the supervisor's supervisor twice on her way out the door that she was not some n*gg** with no value—expressing how she felt her supervisor had viewed her. The claimant did not bang her fist on the desk and scream in a threatening manner, though the employer alleged she did.

**CONCLUSIONS:** Section 207.044 of the Act provides that an individual who was discharged for misconduct connected with the individual's last work is disqualified for benefits until the individual has returned to employment and worked for six weeks or earned wages equal to six times the individual's benefit amount.

Section 201.012 of the Act defines misconduct to mean mismanagement of a position of employment by action or inaction, neglect that jeopardizes the life or property of another, intentional wrongdoing or malfeasance, intentional violation of a law, or violation of a policy or rule adopted to ensure the orderly work and the safety of employees, but does not include an act in response to an unconscionable act of an employer or superior.

The following decision has been adopted as a precedent by the Commission in Section **PR 190.00** of the Appeals Policy and Precedent Manual.

> Appeal No. 21386-AT-65 (Affirmed by 656-CA-65). Testimony under oath is more convincing than unsworn written statements or testimony based on hearsay.

The following decision has been adopted as a precedent by the Commission in Section **MC 390.10** of the Appeals Policy and Precedent Manual.

> Appeal No. 3697-AT-69 (Affirmed by 405-CA-69). Although the claimant had been provoked by a co-worker's intimate questions about her personal life, she did not complain of the matter to management. Instead, she responded with a swear word. When management learned of the incident, the claimant was discharged. HELD: The claimant's use of objectionable language to the co-worker, instead of giving the employer an opportunity to take corrective measures, was misconduct connected with the work. Disqualification under Section 207.044.

The first above-cited precedent stands for the proposition that sworn testimony carries greater weight than unsworn second-hand statements. The second above-cited precedent stands for the proposition that use of objectionable language to the co-worker, instead of giving the employer an opportunity to take corrective measures, was misconduct connected with the work.

San Jacinto College 000414

The claimant was discharged because she accused her supervisor of being a racist. The Tribunal finds that the supervisor's treatment of the claimant with regard to requesting time off was demeaning and spiteful, following her rightful complaints about his inappropriate racial comments. Though the supervisor may not have been aware that his comments carried hurtful messages and stereotypes, they were nonetheless, tinged with racism and the claimant was justified in bringing her complaints. The employer was unjust in ignoring them and in enabling the supervisor to retaliate unabated. Therefore, the claimant's complaints, even her use of the N-word, are justified under the circumstances. There are no perfect victims. Even if the Claimant was a bit thin skinned to begin with, the amalgamation of slights and insults, were enough to provoke even the most even keeled claimant. Therefore, the Tribunal finds that the claimant was discharged for lodging a legitimate and appropriate complaint, which the employer failed to address.

The employer alleged that it was not the complaint but the manner it which it was lodged that was the impetus for the discharge. Applying the first above-cited precedent to this case, the Tribunal gives greater weight to the credible and persuasive testimony of the claimant and finds that the claimant did not bang her fist on the desk and scream in a threatening manner. The parties agree that the claimant used the N-word. As the second above-cited precedent points out, a claimant must give the employer a chance to address inappropriate comments and conduct coming from a coworker. In this case and under these circumstances, the foul language does not rise to the level of misconduct because the claimant was provoked by the steady stream of aggressions by the supervisor, and unlike the claimant in the second precedent case, she did give the employer ample opportunity to address the behavior. The employer chose instead to isolate and blame the claimant. Therefore, the claimant was discharged for reasons other than misconduct connected to the work. The determination dated August 31, 2017, which disqualified the claimant for benefits beginning July 16, 2017 under Section 207.044 of the Act, will be reversed.

Section 205.013 of the Act provides that at the end of each calendar quarter the Commission shall bill each reimbursing employer for an amount equal to the amount of the regular benefits plus one-half (1/2) of the amount of the extended benefits paid during such quarter which are attributable to service in the employ of such employer, except that a state, a political subdivision of a state, or any instrumentality of any states or political subdivisions of a state, that is a reimbursing employer shall pay 100 percent of the extended benefits paid, and reimbursements shall be paid by the reimbursing employer to the Commission.

If a reimbursing employer pays a reimbursement to the commission for benefits paid to a claimant that are not in accordance with the final determination or decision under this subtitle, the employer is not entitled to a refund of, or credit for, the amount paid by the employer to the commission unless the employer has complied with the requirements of Section 208.004 with respect to the claimant.

Section 205.0125 of the Act, effective for claims dated September 1, 2015, and later, provides that notwithstanding any other provision of Chapter 205 of the Act, a reimbursing employer is not liable for paying a reimbursement for benefits paid to an individual, regardless of whether the employer was named as the individual's last work, if the individual's separation from work with the employer resulted from the individual being discharged for misconduct or voluntarily leaving work without good cause connected with the individual's work.

San Jacinto College 000415

Since the claimant's separation from the employer's employment was not a discharge for misconduct connected with the work or a voluntary separation without good cause connected with the work, the employer will be billed for benefits paid to the claimant based on wages from this employer.

**DECISION:** The determination dated August 31, 2017, which disqualified the claimant for benefits beginning July 16, 2017 under Section 207.044 of the Act, is reversed.

The employer will be billed.

*[signature]*

A. TRUDEAU
Hearing Officer

axt

San Jacinto College 000416